**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

FILED

OCT 1 7 2018

CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
          DEPUTY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. SA-18-CR-0603-DAE |
| | ) | **S U P E R S E D I N G** |
| Plaintiff, | ) | **I N D I C T M E N T** |
| | ) | |
| v. | ) | [Vio.: 18 U.S.C. § 1343 Wire Fraud; |
| | ) | 8 U.S.C. §§ 1028A(a)(1) Aggravated |
| BRADLEY LANE CROFT (1), | ) | Identity Theft; 18 U.S.C. § 1956 |
| | ) | Money Laundering; 26 U.S.C. §7206(1) |
| Defendant. | ) | Making a False Tax Return |

THE GRAND JURY CHARGES

## SUPERSEDING INDICTMENT

## INTRODUCTION

At all times relevant to this Indictment:

1. The United States Department of Veterans Affairs (VA) is a federal Cabinet-level agency that provides near-comprehensive healthcare services to eligible military veterans at VA medical centers and outpatient clinics located throughout the country; several non-healthcare benefits including disability compensation, vocational rehabilitation, education assistance, home loans, and life insurance; and provides burial and memorial benefits to eligible veterans and family members at 135 national cemeteries.

2. The VA administers a variety of educational benefit programs for veterans that provide tuition assistance for qualified veterans. These programs are referred to generally as the GI Bill and are found in Title 38, United States Code, Chapters 30 through 35, 1606 and 1607.

1

3. Under Title 38, United States Code, Chapter 33 (the "Post-9/11 GI Bill), the VA provided educational assistance to individuals who entered into military service or actively served in the military after September 11, 2001, and who otherwise qualified for assistance based upon their length of service, the nature of their discharge, and other service-related factors.   Effective October 1, 2011, the VA paid Post-9/11 GI Bill benefits to individuals pursuing non-institute of higher learning (Non-IHL), non-degree programs, including non-accredited, non-college degree (NCD) schools or programs.

4. Pursuant to the Post-9/11 GI Bill, for approved NCD programs, the VA paid tuition and fees directly to the NCD school at which the veteran was enrolled.

5. Federal law required each state to create or designate a State approving agency (SAA) to review and approve academic institutions and programs of education that were eligible for VA benefits, including NCD programs that were eligible for Post-9/11 GI Bill benefits.

6. The Texas Veterans Commission (TVC) is a state agency created by the Texas Legislature to assist veterans and administer veteran programs.   The TVC administers the Veterans Education program in the State of Texas as the SAA for VA purposes.   The Veterans Education Program approves all programs for Chapter 30, 33, 35, 1606, and 1607 federal educational benefits. Through an approval process, the TVC ensures that institutions and employers comply with federal guidelines and are qualified to provide the type of training offered.

7. A school that received Post-9/11 GI Bill benefits was required to designate a School Certifying Official (certifying official), who informed the VA regarding the enrollment status of student veterans.   The certifying official was also

2

responsible for maintaining current knowledge of VA rules and benefits, maintaining records of veteran students, and making such records available for inspection by the VA and TVC.   The certifying official was also required to complete the VA Form 22-1999, VA Enrollment Certification (Enrollment Certification) for each veteran student who received a VA education benefit. Using the Enrollment Certification, the certifying official would certify the course in which the veteran was enrolled, the enrollment period, the number of hours per week that the veteran would attend classes, and the cost of tuition.

8.  Automated Clearing House (ACH) is an electronic network for financial transactions in the United States. ACH processes large volumes of credit and debit transactions in batches. ACH credit transfers include direct deposit, payroll and vendor payments. ACH direct debit transfers include consumer payments on insurance premiums, mortgage loans, and other kinds of bills. Both the government and the commercial sectors use ACH payments. ACH is a computer-based clearing and settlement facility established to process the exchange of electronic transactions between participating depository institutions.   The largest ACH operator in the United States are the Federal Reserve Banks.   The clearinghouse for Federal Reserve Bank ACH transactions is located in New Jersey. All ACH transactions conducted through the Federal Reserve Bank system pass through that clearinghouse. For purposes of this indictment, all ACH transactions were conducted through the Federal Reserve Bank system and passed through the clearinghouse in New Jersey.

9.  **BRADLEY LANE CROFT** (CROFT) operated a dog training and dog handler school in San Antonio, Texas.   He advertised this business as Universal K-9.

3

CROFT initially operated under Universal K-9, Inc., then under Redonte

Company, L.L.C, which operated under the assumed name Universal K-9, and

finally under Universal K-NINE.

## SCHEME TO DEFRAUD

10.  In September of 2013, CROFT began the application process with the TVC to

obtain certification to allow Universal K-9 to receive GI Bill educational benefit

payments for providing dog handler training.

11.  In the course of the application process, CROFT emailed several documents to

TVC on October 4, 2015, that contained the names of four individuals who were

purported to be instructors for the Universal K-9 classes for which CROFT was

seeking approval to obtain GI Bill benefits.   Those individuals were listed as

Victim 1, Victim 2, Victim 3, and Victim 4.   The application also included

training documents purporting to show the training and certification of each of the

instructors.   In fact, none of those individuals had granted CROFT permission to

use their names and were not working as instructors at Universal K-9 in the

classes described in the application.   In the case of Victim 1, he had died two

years prior to the submission of the Application for Approval and therefore could

not have been a trainer for Universal K-9.   These documents were sent by

CROFT from the e-mail address bradcroft@satx.rr.com.

12.  Subsequent to the submission of the fraudulent documents and the receipt of

approval to provide dog handler training as a TVC approved training course,

CROFT and others then solicited veterans as students for the Universal K-9 dog

handler course indicating that veterans could use their GI Bill benefits to pay for

4

the course.   CROFT and others would enroll veterans in the Universal K-9 dog-handling course and submit enrollment records of those individuals to the VA for payment as part of the individual's GI Bill benefits knowing that the approval of the training had been fraudulently obtained.   Universal K-9 offered two courses that were authorized for payment through the GI Bill program.   The dog handler's course costs range from $6,500.00 for the K-9 Handler dual-purpose detection program to $12,000.00 for the K-9 trainer/instructor program.   Once a student registered for the course, CROFT, or INDIVIDUAL 1 acting at CROFT's direction, acting as the certifying official, would file a claim with the VA for payment of the course fees.   Claims would then be transmitted by wire from CROFT in Texas to VA regional review offices located in Oklahoma, Missouri and New York.   Those regional review offices would then review the claims and send completed claims by wire to the Benefits Delivery Network located in Chicago, Illinois.   Once final approval was confirmed, payment instructions would be transmitted by wire to the United States Treasury payment system located in Kansas City, Missouri and subsequently wire transfers of funds would be sent to the claimant's designated bank.   The account for Universal K-NINE was initially located at Bank of America in Gayton Crossing, Virginia.   In November of 2017, deposits were redirected to the Universal K-NINE accounts at Wells Fargo Bank in Virginia.   Between 2016 and the present, Universal K-9 filed approximately 185 claims relating to the education of approximately 132 veterans and totaling over $1,260,000.00.   The most recent known payment from the VA was received by Well Fargo in July of 2018.

## **MANNER AND MEANS**

13. On September 29, 2015, INDIVIDUAL 1, at the direction of CROFT, opened account no. XXXXXXXX8171 at Bank of America in the name of Universal K NINE.   Payments from the VA were initially directed into this account.

14. On October 4, 2015, CROFT submitted documents to the TVC for the purpose of obtaining approval to receive payment through the use of GI Bill educational benefits that contained the names of Victim 1, Victim 2, Victim 3, and Victim 4 who were purported to be instructors for the Universal K-9 classes for which CROFT was seeking approval to receive payment.   In fact, none of those individuals were instructors for the stated courses and none of those individuals had authorized CROFT to use their names in that regard.

15. On June 29, 2016, Universal K-9's Application for Approval was accepted by TVC and Universal K-9 was authorized to receive GI Bill benefits for veterans attending courses provided by Universal K-9.

16. Between June 29, 2016 and August 8, 2018, CROFT submits claims for payment to the VA for educational services provided to veteran students attending dog handler courses provided by Universal K-9.   Each claim would be assigned a claim number for processing purposes.   The claims identified by claim numbers set out below in Counts One through Eight of this indictment were claims submitted by CROFT in this manner.

17. The VA would process and review the claims submitted by CROFT and completed claims were processed for payment through the VA system.

18. Approved claims were then authorized for payment through the United States Treasury Payment Center in Kansas City, Missouri.   ACH transactions in the amount of the approved payment would then be generated and sent electronically

6

through the national ACH system and result in a deposit into the bank account designated by CROFT.

19. On November 20, 2017, Individual 1, at the direction of CROFT, opened account no. XXXXXXXX1730 at Wells Fargo Bank in the name of Universal K NINE. Shortly thereafter, payments from the VA were directed into this account.

20. At various times throughout the period of the scheme, CROFT would direct Individual 1 to make withdrawals from the accounts of Universal K NINE and either provide CROFT with the money or purchase items for CROFT.

## COUNTS ONE THROUGH EIGHT
### [18 U.S.C. § 1343]

The information set out above is incorporated fully herein.

On or about the dates listed as to each count below, in the Western District of Texas and elsewhere and within the jurisdiction of the Court,

### BRADLEY LANE CROFT (1),

defendant herein, having devised the above described scheme or artifice to defraud and to obtain money by means of materially false and fraudulent pretenses, representations, and promises, did for the purpose of executing such scheme or artifice, cause to be transmitted by wire and radio communications, in interstate and foreign commerce, writings, signs, pictures, signals and sounds, specifically the Automated Clearing House (ACH) electronic financial transaction in the amounts listed below as to each count from the United States Treasury Payment Center in Kansas City, Missouri to the Universal K-NINE bank account no. xxxxxx1730 at Wells Fargo Bank in Virginia:

| Count | Claim File No. | Amount | Date |
|-------|----------------|--------|------|
| ONE | 642161775 | $12,500.00 | January 17, 2018 |

| TWO | 608502940 | $12,500.00 | January 25, 2018 |
| THREE | 635050120 | $12,500.00 | January 25, 2018 |
| FOUR | 375961984 | $12,500.00 | January 29, 2018 |
| FIVE | 635347422 | $12,500.00 | February 6, 2018 |
| SIX | 171684140 | $12,500.00 | February 15, 2018 |
| SEVEN | 631054077 | $12,500.00 | February 16, 2018 |
| EIGHT | 429816546 | $6,500.00 | March 6, 2018 |

all in violation of Title 18, United States Code, Section 1343.

## COUNT NINE THROUGH TWELVE
### [18 U.S.C. §§ 1028A(a)(1)]

The information set out above is incorporated fully herein.

On or about October 4, 2015, in the Western District of Texas and elsewhere and within the jurisdiction of the Court, defendant

### BRADLEY LANE CROFT (1),

did knowingly use, without lawful authority, a means of identification of another person, to wit, the name and training documentation of the individual whose initials are set out in the chart below relative to each count, during and in relation to the crime of Wire Fraud as outlined in Counts One through Eight of this indictment, felonies enumerated in Title 18, United States Code, Section 1028A(c), to wit, Title 18, United States Code, Sections 1343, part of Title 18, United States Code, Chapter 63, all in violation of Title 18, United States Code, Sections 1028A(a)(1).

| Count No. | Individual |
| NINE | Victim 1 |

8

TEN       Victim 2

ELEVEN     Victim 3

TWELVE     Victim 4

## COUNT THIRTEEN
[18 U.S.C. §§ 1956(A)(1)(A) and (B) and 2]

On or about May 25, 2017, in the Western District of Texas, Defendant,

### BRADLEY LANE CROFT (1),

aided and abetted by others, did knowingly and intentionally conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit: the purchase of a 2017 American Eagle 45T motorhome, VIN 4UZFCGBG9HCJB4052, which involved property, that is $452,788.95 in United States currency, which was the proceeds of a specified unlawful activity, that is wire fraud, a violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of specified unlawful activity and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct said financial transaction, he knew that the property involved represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(A) and (B).

## COUNT FOURTEEN
[18 U.S.C. §§ 1956(A)(1)(A) and (B) and 2]

On or about April 16, 2018, in the Western District of Texas, Defendant,

### BRADLEY LANE CROFT (1),

aided and abetted by others, did knowingly and intentionally conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, to wit: the purchase of real property known as 15329 Tradesman, San Antonio, Texas, which involved property, that is

9

$319,496.17 in United States currency, which was the proceeds of a specified unlawful activity, that is wire fraud, a violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of specified unlawful activity and knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activity, and that while conducting and attempting to conduct said financial transaction, he knew that the property involved represented the proceeds of some form of unlawful activity, all in violation of Title 18, United States Code, Section 1956(a)(1)(A) and (B).

## COUNT FIFTEEN
[26 U.S.C. § 7206(1)]

On or about February 25, 2017, in the Western District of Texas, the defendant,

**BRADLEY LANE CROFT (1),**

a resident of San Antonio, Texas, did willfully make and subscribe a United States Individual Income Tax return IRS Form 1040, for the calendar year 2016, which was verified by a written declaration that it was made under the penalties of perjury and which he did not believe to be true and correct as to every material matter.   That IRS Form 1040 income tax return, which was prepared and submitted in the Western District of Texas and was filed with the Internal Revenue Service, reported income of $2,000.00 on lines 12 and 22 of IRS Form 1040, whereas, as he then and there knew, he had received income in tax year 2016 well in excess of $2,000.00, which he failed to report, all in violation of Title 26, United States Code, Section 7206(1).

## COUNT SIXTEEN
[26 U.S.C. § 7206(1)]

On or about April 5, 2018, in the Western District of Texas, the defendant,

**BRADLEY LANE CROFT (1),**

a resident of San Antonio, Texas, did willfully make and subscribe a United States Individual

Income Tax return IRS Form 1040, for the calendar year 2017, which was verified by a written

declaration that it was made under the penalties of perjury and which he did not believe to be

true and correct as to every material matter.   That IRS Form 1040 income tax return, which was

prepared and submitted in the Western District of Texas and was filed with the Internal Revenue

Service, reported income of $2,000.00 on lines 12 and 22 of IRS Form 1040, whereas, as he then

and there knew, he had received income in tax year 2017 well in excess of $2,000.00, which he

failed to report, all in violation of Title 26, United States Code, Section 7206(1).

## NOTICE OF UNITED STATES OF AMERICA'S DEMAND FOR FORFEITURE
### [*See* Fed.R.Crim.P. 32.2]

This Notice of Demand for Forfeiture includes but is not limited to the property described

below in Paragraphs III through VI.

### I.
### Wire Fraud Violations and Forfeiture Statutes
### [Title 18 U.S.C. § 1343, subject to forfeiture pursuant to Title 18 U.S.C. § 981(a)(1)( C), made applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c)]

As a result of the foregoing criminal violations set forth above, the United States of

America gives notice to the Defendant of its intent to seek the forfeiture of the property described

below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 981(a)(1)(C), made

applicable to criminal forfeiture by Title 28 U.S.C. § 2461(c), which states the following:

> **Title 18 U.S.C. § 981.**
> **(a)(1)** The following property is subject to forfeiture to the United States:
> * * *
> **(C)** Any property, real or personal, which constitutes or is derived from proceeds traceable to  . . .  any offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

Wire Fraud is an offense constituting "specified unlawful activity" as defined in section 1956(c)(7)
of this title.

## II.
## Money Laundering Violations and Forfeiture Statutes
### [Title 18 U.S.C. § 1956, subject to forfeiture pursuant to Title 18 U.S.C. § 982(a)(1)]

As a result of the foregoing criminal violations set forth above, the United States of America gives notice to the Defendant of its intent to seek the forfeiture of the property described below upon conviction pursuant to Fed. R. Crim. P. 32.2 and Title 18 U.S.C. § 982(a)(1), which states:

**Title 18 U.S.C. § 982. Criminal forfeiture**
**(a)(1)** The court, in imposing sentence on a person convicted of an offense in violation of section 1956, 1957, or 1960 of this title, shall order that the person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property.

## III.
## Personal Properties

1. 2017 American Eagle 45T Motorhome, VIN: 4UZFCGBG9HCJB4052;
2. 2018 Ford F-150 King Ranch Lariat, VIN: 1FTEW1EG7JFB84609;
3. 2017 Dodge Ram 1500 Laramie, VIN: 1C6RR7NTXHS832445;
4. 2016 Yamaha Superjet Ski, Hull No.: YAMH0007D616;
5. 2008 Yamaha Waverunner Jetski, Hull No.: YAMA3976I809;
6. 2012 Rocket International Trailer, VIN: 4YBAB2026CF005447;
7. $134,415.64, More or Less, in United States Currency seized from Wells Fargo Account #XXXXXX1730 in the name UNIVERSAL K NINE; and
8. $4,300.00, More or Less, in United States Currency.

## IV.
## Real Property

Real Property located and situated at **15329 Tradesman, San Antonio, Bexar County, Texas**, with all buildings, appurtenances, and improvements thereon and any and all surface and sub-surface rights, title, and interests, if any, and being more fully described as follows:

LOT 15, BLOCK 2, NEW CITY BLOCK 14846, TRADESMAN NORTH INDUSTRIAL SUBDIVISION UNIT 1, IN THE CITY OF SAN ANTONIO, BEXAR COUNTY, TEXAS, ACCORDING TO THE MAP OR PLAT THEREOF RECORDED IN VOLUME 6200, PAGE 129, DEED AND PLAT RECORDS, BEXAR COUNTY, TEXAS.

## V.
## Money Judgment

**Money Judgment:** A sum of money which represents the value of any proceeds obtained directly or indirectly and any facilitating property used or intended to be used in, and any property involved in, the Counts set forth above for which the Defendant is liable.

## VI.
## Substitute Assets

If any of the property described above as being subject to forfeiture for the violations set forth above, as a result of any act or omission of the Defendant:

a.   cannot be located upon the exercise of due diligence;
b.   has been transferred or sold to, or deposited with, a third party;
c.   has been placed beyond the jurisdiction of the court;
d.   has been substantially diminished in value; or
e.   has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States of America to seek forfeiture of any other property owned by the Defendant, up to the value of said money judgment, as substitute assets pursuant to Title 21 U.S.C. 853(p) and Fed. R. Crim. P. 32.2(e)(1).

A TRUE BILL

Foreperson

JOHN F. BASH
UNITED STATES ATTORNEY

By: _____
     GREGORY J SUROVIC
     Assistant United States Attorney