1      UNITED STATES DISTRICT COURT
       WESTERN DISTRICT OF TEXAS
2         SAN ANTONIO DIVISION

3   UNITED STATES OF AMERICA        :
                                    :
4   vs.                             : No. SA:18-CR-00603
                                    : San Antonio, Texas
5   BRADLEY LANE CROFT(1),          : November 6, 2019
    Defendant.                      :
6   ********************************************************

7        TRANSCRIPT OF BENCH TRIAL VERDICT (Volume 7)
              BEFORE THE HONORABLE DAVID A. EZRA
8            SENIOR UNITED STATES DISTRICT JUDGE

9   APPEARANCES:
    FOR THE GOVERNMENT:
10    Gregory J. Surovic, Esquire
      Fidel Esparza, III, Esquire
11    United States Attorney's Office
      601 N.W. Loop 410, Suite 600
12    San Antonio, Texas  78216
      (210)384-7020; greg.surovic@usdoj.gov
13

14  FOR THE DEFENDANT:
      Thomas Joseph McHugh, Esquire
15    William A. Brooks, Esquire
      Law Offices of Thomas J. McHugh
16    130 E. Travis Street, Suite 425
      San Antonio, Texas  78205
17    (210)227-4662; thomasjmchughlaw@gmail.com

18

19

20  COURT REPORTER:
    Angela M. Hailey, CSR, CRR, RPR, RMR
21  Official Court Reporter, U.S.D.C.
    655 East Cesar E. Chavez Blvd., Third Floor
22  San Antonio, Texas  78206
    Phone(210)244-5048
23  angela_hailey@txwd.uscourts.gov

24  Proceedings reported by stenotype, transcript produced by
    computer-aided transcription.
25

1   *(Wednesday, November 6, 2019, 1:33 p.m.)*

2                          *   *   *

3          COURT SECURITY OFFICER:  All rise.

4          COURTROOM DEPUTY CLERK:  SA:18-CR-00603, United States

5   of America versus Bradley Lane Croft.

6          MR. SUROVIC:  Greg Surovic and Fidel Esparza for the

7   United States, Your Honor, present and ready.

8          MR. MCHUGH:  Good afternoon, Your Honor.  Tom McHugh

9   and Will Brooks and the defendant.  We are present, we are

10  ready.

11         THE COURT:  Thank you very much.  Just one

12  housekeeping matter I need to make again clear on the record.

13  The federal rules do provide that this Court should submit with

14  a verdict in the case in which the judge has tried the case

15  both as judge and jury, in other words a jury-waived trial in a

16  criminal matter, a felony case, unless all counsel and the

17  defendant specifically waive the Court doing so and in this

18  case that has, in fact, happened and I would ask that that be

19  placed on the record yet again.  Mr. Surovic?

20         MR. SUROVIC:  We have no objection, Your Honor.

21         THE COURT:  Well, no, it's not no objection.  You

22  either agree or you disagree.

23         MR. SUROVIC:  I correct myself, Your Honor.  We agree.

24         MR. MCHUGH:  Your Honor, Tom McHugh representing

25  defendant Croft here.  He and I have visited before and we just

1   visited now regarding that.  We both agree.

2            THE DEFENDANT:  I agree.

3            THE COURT:  You agree with that?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  All right.  Now, let me say this, that

6   this Court takes very seriously its responsibility to review

7   the evidence and to hold the government to its burden of proof

8   which is, in a criminal case under the Constitution and the

9   laws of this country, beyond a reasonable doubt.  It is not

10  often that a defendant will waive a jury in a criminal matter.

11  I have had it done because of my many years on the bench, 31

12  plus now, only a handful of times.  I know many judges who have

13  30 or more years of service and have never had a criminal

14  defendant waive a jury.  And so it makes it even more important

15  that the Court do this in a manner and mode in which the Court

16  feels comfortable that it has reviewed each and every aspect of

17  the case.  And this is what took the Court some time.  I didn't

18  issue a verdict immediately after trial, but rather took the

19  time to wait for the arguments and then reviewed everything

20  that was presented.  And did so in a dispassionate manner and

21  very carefully.  Having done so, would you prefer that I read

22  each count or would you prefer that I just simply announce the

23  Court's verdict as to every count?  I can read each count.

24           THE DEFENDANT:  I'd rather just hear it.

25           THE COURT:  Well, the Court is going to read each

1    count then.  Having heard the testimony in the above case and

2    reviewed the admitted exhibits as well as having considered the

3    arguments of the parties, the Court enters the following

4    verdict; as to count one, guilty; as to count two, guilty; as

5    to count three, guilty; as to count four, guilty; as to count

6    five, guilty; as to count six, guilty; as to count seven,

7    guilty; as to count eight, guilty; as to count nine, guilty; as

8    to count ten, guilty; as to count eleven, guilty; as to count

9    12, guilty; as to count 13, guilty; as to count 14, guilty; as

10   to count 15, guilty; and as to count 16, guilty.

11        Signed by myself as a United States District Judge

12   here in the San Antonio Division, November 6th, 2019.

13        This Court hereby directs and orders the verdict to be

14   filed and spread upon the records of the United States District

15   Court for the Western District of Texas.  Mr. Surovic.

16        MR. SUROVIC:  Your Honor, at this time I believe there

17   is a forfeiture portion of the case.  The defendant has agreed

18   to submit that to the Court as well.

19        THE COURT:  Yes, the forfeiture is going to be --

20   because the Court finds the defendant guilty on all counts, the

21   forfeiture is going to be granted.

22        MR. SUROVIC:  Thank you, Your Honor.  We will file the

23   appropriate paperwork on that.

24        THE COURT:  Yes, that can be submitted to the Court.

25        MR. SUROVIC:  In addition, Your Honor, at this time

1    the government would move to take the defendant into custody

2    since he is now a convicted individual.

3         MR. MCHUGH:  Your Honor, respectfully, the defendant

4    respects this Court's role in this proceeding.  In regard to

5    the matter of bond, he has been under house arrest since August

6    of 2018.  I don't believe he's a risk of flight.  I don't

7    believe he's had any issues or violations.  I know that

8    Probation is going to prepare a presentence investigation

9    report.  I know that this Court, as all parties, will seriously

10   consider that and address that.  I would ask this Court to not

11   take the defendant into custody, respectfully.

12        THE COURT:  Mr. Surovic, you know, it generally is not

13   my practice to take a defendant into custody in a case in which

14   they have been out and have complied, and you usually don't ask

15   for that.  I'm asking what is different here?  Is there a

16   reason why you believe that he needs to be taken into custody?

17        MR. SUROVIC:  There are, Your Honor.  As the Court may

18   or may not know, we argued for his detention in the original

19   instance.

20        THE COURT:  Right.

21        MR. SUROVIC:  He was originally considered for bond

22   and it was determined that because of conditions laid out to

23   the Magistrate Judge, that maybe house arrest was more

24   appropriate in this instance.  We were concerned about the

25   possibility he might harass witnesses.  Two of the witnesses

1   that testified in this court have indicated that they have

2   personal concerns about their safety.  This has been heightened

3   for the government at least in the last two months.  We

4   received word from Mr. Cook and the FBI investigated a series

5   of photographs that he was sent as texts on his phone.  They

6   were essentially photographs of decapitated heads and gory

7   pictures from -- it appeared to be slayings in Mexico.  There

8   was no reason why he would receive anything like that except

9   for the fact that this case is pending.  The FBI attempted to

10  do a detailed investigation of those photos and it ended up

11  coming back to a dead stop in Chicago, a company that basically

12  allows you to send things anonymously and they were never able

13  to get beyond that to make a determination, so I wasn't able to

14  approach the Court and request that his bond be revoked at that

15  point because I didn't have evidence that he had done

16  something.

17          Now where the burden has shifted, where the

18  presumption prior to conviction is that he should be allowed to

19  remain on bond, now the presumption is he should be in custody

20  unless there's clear and convincing evidence that he's not a

21  risk of flight and danger to the community.  We would submit

22  that given those facts, the fear of two of the witnesses in the

23  case and that unusual text, that this is one of those instances

24  where he should be taken into custody.

25          THE COURT:  Well, I'm not going to tag the defendant

1    with something that is or is not his doing.  I mean, we don't

2    know.  I mean, this fellow received these texts.  Was it just

3    one of them or just him, right?

4              MR. SUROVIC:  It was a very short -- it was all --

5              THE COURT:  But it was just him, there was no other --

6              MR. SUROVIC:  It was just to Mr. Cook, that's correct.

7              THE COURT:  Had it been several witnesses, then the

8    Court would be more inclined to believe there was a connection.

9    But we don't know what else is going on in Mr. Cook's life that

10   would have potentially caused that to happen and I certainly

11   don't believe in putting somebody in detention solely and only

12   because there is a bad or unfortunate text that has been

13   received by somebody, but we don't know from whom.

14             On the other hand, the defendant has been charged with

15   a number -- and convicted now of a number of rather serious

16   offenses and I am not entirely comfortable that the defendant

17   would at this point -- he has a somewhat transient life-style,

18   he's living in a trailer there and even though it's a pretty

19   luxurious one, I think it's on four wheels or it was, I think

20   that's been seized now.

21             MR. SUROVIC:  It has, Your Honor.  It will be subject

22   to forfeiture.

23             THE COURT:  But he doesn't have a permanent abode

24   which he owns.

25             MR. MCHUGH:  Your Honor, respectfully, he has a

1  permanent abode.

2           THE COURT:  Where is that?

3           MR. MCHUGH:  And that's on Tradesman Drive in San

4  Antonio where the dog school is.

5           THE COURT:  I thought he was living in a kind of a

6  shack or something there.

7           MR. MCHUGH:  Yeah, he's living in a trailer on those

8  premises.

9           THE COURT:  That's what I thought.

10          MR. MCHUGH:  But there has been no history, there has

11 been no suggestion, he is a single parent, that he would ever

12 consider fleeing the jurisdiction of this Court.

13          THE COURT:  Well, you know, I've had that argument

14 made to me.  I've had the opposite argument made to me by

15 yourself in other cases, as you know, many times.  And the

16 problem is you don't know until it happens.  And when it

17 happens, it happens.  As a matter of fact, I had a hearing this

18 morning where one of the Magistrates let a defendant out, was

19 convinced that the defendant would appear and they're still

20 looking for the defendant.  Defendant has not appeared, he

21 absconded.  I'm not tagging this defendant with that situation.

22 That's an entirely different situation, but just because

23 somebody says they're going to be there, I presume he told the

24 Magistrate he was going to be there too, that guy, and I've had

25 a few others in my career who haven't shown up.  I'll tell you

1    what I am going to do.  I am going to order the defendant into

2    custody at this time.  However, however, I will at such a time

3    as counsel deems it feasible hear a motion by counsel to

4    release him on certain restrictive conditions.  You can file

5    that motion and then Mr. Surovic will have an opportunity to

6    address it and then we'll take another look at it at that time,

7    but I think at this time it's appropriate, particularly given

8    the unhappiness of the verdict obviously, that we don't want

9    anybody doing anything rash, so I am going to direct him into

10   custody today and then counsel can file an appropriate motion.

11           MR. MCHUGH:  Thank you, Your Honor.

12           THE COURT:  And then I'll look at it seriously.

13   Counsel knows me well enough to know that I will, on both

14   sides.  I do want to thank counsel for their very difficult

15   case obviously and it's always difficult.  I mean I don't think

16   the lawyers here in their own careers have argued a criminal

17   case to a judge often and it's always difficult to do.

18   Fortunately I know both counsel very well, they are highly

19   trained and extremely professional and excellent lawyers on

20   both sides.  And so I appreciate it very much the courtesies

21   that the Court received during this trial and the

22   professionalism of both counsel.

23           I want to say to defense counsel, it's never a good

24   thing, you don't want to get a verdict that you had not hoped

25   you would be received, although I'm sure, knowing defense

1    counsel well, this couldn't be a complete shock.  But let me

2    say this, I thought you did an excellent job for your client.

3    You were vigorous in your defense, you were assertive in your

4    defense, your legal arguments and your professionalism were

5    outstanding here.  No one could have done a better job for your

6    client than you did.  There's no question in my mind and I have

7    tried I don't know how many trials before how many lawyers and

8    some of the most illustrious lawyers that have ever practiced

9    in this country have been in my court and it could not have

10   been better tried for the defendant than you did.

11          Years and years ago, a great prosecutor, former

12   Watergate special counsel, Leon Jaworski, who had a

13   relationship at St. Mary's and was there when I was there as an

14   adjunct, told us that "A good lawyer works with the facts, a

15   bad lawyer tries to change the facts."

16          And there was no bad lawyering here.  There was good

17   lawyering here.  You can't change the facts.  The facts spoke

18   for themselves in this case and even looking at them as

19   critically as I did, and each and every time I did I came back

20   to the same conclusion, that the evidence established the

21   defendant's guilt beyond a reasonable doubt.

22          All right, if there's nothing else, then the Court --

23   anything else, Mr. Surovic?

24          MR. SUROVIC:  Not from the government, Your Honor.

25          THE COURT:  Anything else, counsel?

1    MR. MCHUGH:  Not at this time.

2    THE COURT:  The Court stands in recess.

3    COURT SECURITY OFFICER:  All rise.

4    THE COURT:  Before you put the cuffs on him, let --

5    THE DEFENDANT:  Can I give her a hug?

6    THE COURT:  Yes.

7    *(1:49 p.m.)*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

                        *   *   *   *   *

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS


     I certify that the foregoing is a correct transcript from

the record of proceedings in the above-entitled matter.  I

further certify that the transcript fees and format comply with

those prescribed by the Court and the Judicial Conference of

the United States.


Date signed:  May 14, 2020


/s/ Angela M. Hailey

Angela M. Hailey, CSR, CRR, RPR, RMR
Official Court Reporter
655 East Cesar E. Chavez Blvd., Third Floor
San Antonio, Texas  78206
(210)244-5048