UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CAUSE NO: SA-18-CR-603-DAE |
| | § | |
| BRADLEY LANE CROFT | § | |

**DEFENDANT'S SENTENCING MEMORANDUM**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES BRADLEY LANE CROFT, Defendant, by and through his undersigned counsel and submits this sentencing memorandum to assist the Court in determining an appropriate sentence.

**I.**

Your Honor will sentence Bradley Croft on April 22, 2021, following a bench trial guilty verdict on all counts. The presentence investigation report has been prepared and recommends a guideline range of 168-210 months' imprisonment on counts 1-8 and 13-16, and two years per count on counts 9-12, to run consecutively with each other and with counts 1-8 and 13-16, for a total recommended guideline range of 264-306 months.[1]

The Court is respectfully urged to consider the factors set forth in 18 U.S.C. §3553(a) in imposing a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing. Accordingly, the undersigned herein submits that after considering his legal objections and all 18 U.S.C. §3553(a) factors, a downward variance to a total sentence of no more than 60 months is an appropriate sentence, for the following reasons:

**II. *Objections***

Defendant has filed legally sound objections to the recommended guideline range calculation that, if granted, would lower the recommended guideline range to 57-71 months on counts 1-8 and

---

[1] Presentence Investigation Report ("PSR"), para. 73.

13-16, and 2 years on counts 9-12 (to run concurrently with each other but consecutive to counts 1-8 and 13-16), for a total recommended guideline range of 81-96 months. Defendant respectfully requests a downward variance to 36 months on counts 1-8 and 13-16. Thus, when added to the 24 months on counts 9-12 will result in a total sentence of 60 months.

## II. *§ 3553 Consideration*

As this Honorable Court is aware, until the mid and late 1980s federal judges had nearly an unfettered discretion in the sentencing of criminal offenders. This ended with the *Sentencing Reform Act of 1984,* which established the Sentencing Commission and charged the Commission with creating algorithms for guidelines to promote honesty, uniformity and proportionality in federal criminal sentencing on a nationwide basis. U.S. Sentencing Guidelines Manual § 1A1.1(3) (Nov. 2007). Approximately twenty years later, in *Booker v. United States,* 543 U.S. 220 (2005), the U.S. Supreme Court held the Guidelines unconstitutional insofar as they were mandatory, and a slim majority of the Court avoided discarding the guidelines altogether by making them advisory. *Booker* has rendered the United States Sentencing Guidelines advisory in all cases. Accordingly, the courts must now not only "consider guidelines ranges" but must also "tailor the sentence in light of this statutory concern as well." *Id. Booker* allows this Court to regard and treat the CROFT case and every case, individually, when considering uniqueness that a case's individual facts and circumstances may offer.

Title 18, United States Code § 3553(a) is comprised of two distinct parts: the mandate to the Court contained in the prefatory clause of § 3553(a), and the factors to be considered in fulfilling that mandate. With respect to the mandate, § 3553(a) requires a district court to impose a sentence *"sufficient but not greater than necessary"* to comply with the four purposes of sentencing set forth in § 3553(a)(2): (A) to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense, (B) to afford

adequate deterrence, (C) to protect the public from further crimes of the defendant, and (D) to provide the defendant with needed educational or vocational training, medical care, or correctional treatment in the most effective manner. *See* 18 U.S.C. § 3553(a)(2).

The "over-arching provision" of 18 U.S.C. § 3553(a) is to impose a sentence "sufficient, but *not greater than necessary"* to meet the goals of sentencing established by congress. Kimbrough v. United States, 552 U.S. 85, at 101 (2007) (emphasis added).

While this Court must still consider the sentencing guidelines, the Supreme Court has held that the guidelines are, "merely one sentencing factor among many, and the calculated guideline range must be considered in conjunction with the other § 3553(a) factors." *United States v. Reinhart,* 442 F.3d 857, 864 (5th Cir. 2006), *cert. denied,* 549 U.S. 856 (2006) (citing *United States v. Booker,* 543 U.S. 220, 245-46 (2005)).

Additionally, the USSC has further emphasized the need for individualized sentencing, reiterating "the principle that the punishment should fit the offender and not merely the crime". Pepper v. U.S. 131 S.Ct. 1229, 1242 (2011).

It is settled law, that even if the District Court denies the traditional downward departure on a certain mitigating factor, it may, nevertheless, consider the same factor justifying a downward "variance" and reach the same sentence under the § 3553(a) analysis. *See,* US. v. Carter 530 F.3d 565 (7th Cir. 2008).

Defendant Bradley Croft herein submits that at no point was it ever his intention to defraud any person or entity, and that his motives and goals were to start and build a business, from the ground up, wherein he trained both service dogs and service dog handlers. It was his goal and intention to build this business entity, Universal K-9, for himself and his daughter with the dream that it would grow into a business that would not only serve his own interests but moreover the interests of the community as a whole. In fact, through much effort, sacrifice and hard work, it was beginning to take shape and evolve into something very viable and productive.

Exhibit "A", https://1drv.ms/u/s!ApORJ2q_VWbHgdZq8O3h12mc3zj9rg?e=1NbEWG, is a testament to the fruits of Croft's labor. This collection of photos shows hundreds of law enforcement "busts" that were directly attributed to the working dogs trained and provided by Universal K-9. And these are only the busts that were captured by photos; there exists countless other cases of drugs and drug dealers being taken off the streets by U-K9 dogs and handlers.

The PSR unjustly continues to advance the false narrative that Universal K-9 provided law enforcement with dogs "which were not properly trained or not equipped" for service.[2] This Court will remember that the Government tried to elicit testimony that the shelter dogs were less than qualified, and that many of the U-K9 classes were taught by Croft and not by more "qualified" instructors. However, every witness that had a U-K9 service dog ultimately testified that their dogs were very productive, they made busts and did their jobs, and that they would never trade them for another. Even Wes Keeling testified that he currently owns a school and gets his dogs exactly as did U-K9.

The PSR also falsely states that the dogs and handlers coming out of U-K9 weren't being trained by a "legitimate certified trainer," and that because Croft was training the dogs and handlers, an "unknown number of criminal cases" would be affected.[3]  This is simply inaccurate; there is no evidence that any criminal cases made by U-K9 service dogs have been compromised. Simply stated, it doesn't matter who trained the dogs and handlers, so long as the dogs ultimately passed a certification test, which all of the U-K9 dogs in service have done.

The PSR, as well as the Government, have twisted this beautiful story of shelter dogs, many facing euthanasia, being saved to loving owners and serving their communities. This is reflected in the great interest taken by news agencies to spread this story, and the many awards and kudos given to Brad Croft and Universal K-9.

---

[2] PSR, para 13., page 8.
[3] PSR, para. 26, page 11

Some of these can be seen in Exhibit "B", https://1drv.ms/v/s!ApORJ2q_VWbHgdZpGcZ-sj_QqGKDFg?e=tcdwsi.[4] The narrative advanced by the Government and the PSR is twisted to make everything associated with Brad Croft nefarious, when such is not the case.

Brad Croft left the luxury of a good business and a home in the suburbs to start a business from scratch that would provide for himself and his daughter, and that would do positive things for deprived animals and for the community. Living in the trailer with his daughter, Croft would walk out the front door every day to a rocky and dusty commercial business lot, and oftentimes 20-30 hungry barking dogs. But he loved it, and his daughter loved it.

Cameron Croft was 10 years old when her parents separated, and she went to live with Brad Croft. She no longer has any relationship with her mother, as Brad Croft has been her sole parental influence. Brad Croft did a wonderful job raising Cameron into the intelligent, loving, responsible adult woman she has grown to be. This can only be credited to Brad Croft, and the commitment he made to being a positive father and role model. Brad Croft is not the menace he is being made out to be.

Universal K-9 was real, and the training of dogs and handlers was genuine.  Nothing at trial refutes this fact. The hundreds of dogs that passed through U-K9 were not only saved from a sure and ultimate destruction, they were also transformed into and became heroes for the first-responders and law enforcement agencies which they served. Their history of drug seizures and arrests is nothing short of fantastically successful. The Government failed to produce any student veteran to state that they had been bamboozled or defrauded, not a single one.

Title 18, United States Code, § 3553(a)(2) supports the argument that a strict *Guideline* sentence is not necessary to deter Defendant Croft from repeating the conduct in the future, nor

---

[4] It is noteworthy that in one of the news pieces, Wes Keeling introduces himself to the viewers as "Wes Keeling, manager of Universal K-9," hardly consistent with Keeling's false trial testimony limiting his role with Universal K-9 to interdiction classes.

is it consistent with the overall *ends of justice* consideration. Respectfully, such a sentence would be *greater than necessary* and ignore the proportionality of sentences with other offenders who are sentenced for truly defrauding persons of their life savings and stealing their identities. Certainly, a sentence of no more than 60 months is adequate and consistent with the ends of justice. It adequately reflects the seriousness of Croft's conduct, promotes respect for the law, and provides just punishment. Factored into this determination should be the overall uniqueness of the facts of this case, and Bradley Croft's intentions and goals going into the business formation and application process; his intent was never of a criminal nature and/or of a nature to defraud anyone.

Defendant Croft's crimes of conviction are clearly unique to him and are not, at all, proportional to other similar crimes of conviction. Croft's was a case of someone trying to create a noble business endeavor who got frustrated with what seemed to him to be an unfair application process. He became careless with things, but his intent was never to defraud.

Brad Croft respectfully requests this Court to review and take into consideration the entire sentencing guidelines statutory provisions, policy statements, and objections to some of the over-reaching and specific offense characteristics attributed to him in the presentence investigation report.

**WHEREFORE, PREMISES CONSIDERED,** consistent with *United States v. Booker* and its progeny, the Court is humbly asked to give due consideration to all of the factors set forth in 18 U.S.C. §3553(a) in imposing a sentence that is "sufficient, but not greater than necessary" to comply with the purposes enumerated, and grant Defendant's request for a sentence of no more than 60 months.

                Respectfully Submitted,

                /s/ *Scott W. McCrum*
                Scott McCrum
                Texas State Bar No. 00795508
                Attorney at Law
                404 E. Ramsey Rd., Suite 102
                San Antonio, Texas 78216
                Phone: (210) 225-4851
                Fax: (210) 225-7045
                **Attorney for Bradley Lane Croft**

## Certificate of Service

I hereby certify that on April 16, 2021, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will give notice to the following:

Mr. Gregory J. Surovic
Assistant United States Attorney
Western District of Texas

                /s/ *Scott W. McCrum*
                SCOTT W. MCCRUM