UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | No. SA:18-CR-603-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| BRADLEY LANE CROFT, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

ORDER DENYING MOTION FOR NEW TRIAL

The matter before the Court is Defendant Bradley Lane Croft's

("Defendant") Motion for New Trial.  (Dkt. # 220.)  Plaintiff United States of

America filed a response in opposition.  (Dkt. # 221.)  Upon careful consideration,

the Court will **DENY** the motion.

BACKGROUND

On October 17, 2018, Defendant was charged in a sixteen-count

Superseding Indictment returned by a federal grand jury for the Western District of

Texas, San Antonio Division.  (Dkt. # 39.)  Counts One through Eight charged

Defendant with Wire Fraud, in violation of 18 U.S.C § 1343; Counts Nine through

Twelve charged Defendant with Aggravated Identity Theft, in violation of

18 U.S.C. § 1028A(a)(1); Counts Thirteen and Fourteen charged Defendant with

1

Aiding and Abetting in a Money Laundering Scheme, in violation of 18 U.S.C.

§ 1956(a)(1)(A) and (B); and Counts Fifteen and Sixteen charged Defendant with

Making a False Tax Return in violation of 26 U.S.C. § 7206(1).  (Id.)  The

Superseding Indictment also included a Notice of United States of America's

Demand for Forfeiture.  (Id.)  On October 8, 2019, Defendant waived his right to a

jury trial and proceeded to a bench trial.  (Dkt. # 112.)  On November 6, 2019,

Defendant was found guilty by this Court on all counts.  (Dkt. # 130.)

On October 6, 2020, this Court denied Defendant's Pro Se Motion for

Acquittal without prejudice because at the time the motion was filed, Defendant

was represented by counsel.  (Dkt. # 205.)  On December 30, 2020, the Court

denied Defendant's Motion for Reconsideration of the Court's Order of Detention

because Defendant did not meet his burden of proving by clear and convincing

evidence that he was neither a flight risk nor a danger to the community.  (Dkt.

# 212.)

The matter before the Court is Defendant's Motion for New Trial filed

on April 23, 2021.[1]  (Dkt. # 220.)  In the motion, Defendant contends that he is

entitled to a new trial based on newly discovered evidence.  (Id.)  The Government

responded to the motion on April 24, 2021.  (Dkt. # 221.)

---

[1] This motion was filed by counsel on Defendant's behalf.

## LEGAL STANDARD

"Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a). However, only an "exceptional case" will present such a "miscarriage of justice . . . as to warrant granting a new trial."  United States v. Bowen, 799 F.3d 336, 349 (5th Cir. 2015).

"Motions for new trial based on newly discovered evidence are 'disfavored and reviewed with great caution.'"  United States v. Wall, 389 F.3d 457, 467 (5th Cir. 2004) (quoting United States v. Erwin, 277 F.3d 727, 731 (5th Cir. 2001)).  To justify a new trial based on newly discovered evidence, the defendant must prove the following:

> (1) [T]he evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the failure to detect the evidence was not due to a lack of diligence by the defendant; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence if introduced at a new trial would probably produce an acquittal.

Id.  The motion for a new trial should be denied if the defendant fails to demonstrate any of these five prerequisites.  United States v. Freeman, 77 F.3d 812, 817 (5th Cir. 1996).

DISCUSSION

Defendant maintains that newly discovered evidence shows that he "fully intended" to use the four individuals listed in the applications to the Texas Veteran Commission ("TVC") to teach courses for Universal K-9, and that "each of those individuals w[as] similarly interested." (Dkt. # 220.)  Further, the "individuals also knew that Croft would be using their credentials to supplement the applications." (Id.)  As explained below, the Court finds that Defendant is not entitled to a new trial based on this evidence.

I.      Wes Keeling

Defendant contends that the Court was "falsely and dishonestly" led to believe at trial that Wes Keeling never intended to be involved with Universal K-9 and its pursuit of and involvement with teaching veterans through the VTC program, and "that all Keeling was interested in was teaching the interdiction classes to law enforcement officers." (Id.)  Defendant offers four exhibits showing Keeling's involvement in Universal K-9 that he claims warrant a new trial. (See Dkt. # 220, Exs. A–D.)  The Court will address each in turn and explain why none of the exhibits are sufficient grounds to justify a new trial, when considered individually or collectively.

4

A.     Exhibit A

Exhibit A, obtained pursuant to a Freedom of Information Act

("FOIA") request made subsequent to trial, is a memorandum sent from Wes

Keeling to Commander Cody McKinney of the Midlothian Police Department,

requesting permission to use the police facilities for a training.  (Dkt. # 220,

Ex. A.)  Defendant contends that this document shows that "Wes Keeling

ultimately taught K9 handlers courses in Midlothian, contrary to his trial testimony

that he only taught interdiction courses."  (Dkt. # 220.)  However, the fact that

Keeling taught a course in Midlothian "was well known to the defense at the time

of trial and was revealed in discovery."  (Dkt. # 221; see Dkt. # 221-1 at 19.)

Because the Midlothian class was well-known to both parties prior to trial, this is

not newly discovered evidence.  This evidence is also immaterial because, as the

Government notes, the courses offered in Midlothian were not a part of the training

courses being offered by Defendant in San Antonio.  (See id.)  For these reasons,

the Court will not grant Defendant's motion for a new trial based on Exhibit A.

B.     Exhibit B

Exhibit B shows email communications between Defendant Croft,

Keeling, and Andrew McIntosh, a veteran student, regarding a dog handlers course

in Midlothian.  (Dkt. # 220, Ex. B.)  However, Defendant fails to explain why

these emails were not discovered before trial.  See Wall, 389 F.3d at 467

(explaining that for a new trial, the defendant has the burden of showing that "the failure to detect the evidence was not due to a lack of diligence by the defendant"). Further, because the Midlothian course was not part of the training courses being offered by Defendant in San Antonio, this evidence is also immaterial. Accordingly, the Court finds that Exhibit B cannot serve as a basis for granting Defendant a new trial.

    C.    <u>Exhibit C</u>

Exhibit C is a Memorandum of Interview ("MOI") of Keeling's pretrial interview by Assistant United States Attorney Greg Surovic and Special Agent Jeffrey Breen. (Dkt. # 220, Ex. C.) The Government states that this is not newly discovered evidence because the report was provided to the defense prior to trial. (Dkt. # 221.) Defendant argues that this exhibit "was not utilized at trial to bring Keeling's untruthfulness to light as it should have; *in conjunction with* the newly discovered FOIA documents." (Dkt. # 220.) This is not newly discovered evidence. The document was provided to defense counsel before trial, and the fact that it was not utilized at trial does not make it "newly discovered." To the extent that Defendant seeks to argue that this document is "newly discovered evidence" because it was not presented *in conjunction with* the FOIA documents, the Court

has already explained that the information in the FOIA documents was already known by both parties at the time of trial and it is immaterial.  For these reasons, the Court will not grant Defendant's motion for new trial based on Exhibit C.

D.     Exhibit D

Exhibit D shows email communications between Defendant and Keeling about the VA's receipt of the "last few forms" needed and their request to schedule a site visit.  (Dkt. # 220, Ex. D.)  Defendant contends that Exhibit D shows that Keeling was untruthful when he testified that he did not know when Universal K-9 received V.A. approval.  (Dkt. # 220.)  Exhibit D does not warrant a new trial.  Defendant fails to explain why counsel did not discover this evidence before trial.  Also, these emails do not convey what Defendant claims.  First, Exhibit D does not show that Keeling was "untruthful."  The emails do not show when Universal K-9 received V.A. approval; they merely show when the V.A. received the last few forms and provided potential dates for a site visit.  (Dkt. # 220, Ex. D.)  Second, Defendant contends that this document shows that Keeling actively participated in trying to secure V.A. approval, but Keeling only sent one email that is documented in Exhibit D where he says, "Hell yeah bro!! Let's do the damn thang!!"  (Id.)  These emails do not show that he "actively participated" in trying to secure V.A. approval.  Thus, the Court finds that Exhibit D cannot form the basis for a new trial.

II.     Art Underwood

Defendant also contends that a new trial is warranted because several

witnesses who had personal knowledge of Art Underwood's involvement with

Universal K-9 have been located after the trial.  (Dkt. # 220.)  These witnesses

have provided personal testimony that, according to Defendant, "directly refutes

the evidence presented at trial and raises a legitimate issue of fact contrary to the

verdict."  (Id.)  Exhibits E and F are statements from Hannah Malone and Taytum

Goodman, who were friends with Defendant's daughter.  (Dkt. # 220, Exs. E, F.)

They state that they remember seeing Underwood at trainings or when running

errands for the business.  (Id.)  Exhibit G is an affidavit by defense counsel

concerning an interview he had with Julia Jaworski, who worked with Universal

K-9 to secure a lucrative Department of Defense contract to train military dogs and

personnel in March 2013.  (Dkt. # 220, Ex. G.)  Jaworski states that she discussed

the contract with Underwood.  (Id.)  Because this evidence shows that Underwood

had much more of a connection with Universal K-9 than was suggested at trial,

Defendant maintains that he is entitled to a new trial.  (See Dkt. # 220.)

This evidence is immaterial.  Art Underwood died in March 2014.

(Gov't Trial Ex. 9.)  Defendant certified to the TVC in October 2015 that Art

Underwood was and would be an instructor at Universal K-9 in San Antonio.  At

the time of the application, Underwood was clearly not working for Defendant—he

had been dead for a year and a half.  Evidence of Underwood's prior involvement

with Universal K-9 does not change this fact.  Even if this evidence were material,

defense counsel has again failed to explain why these individuals with personal

accounts of Underwood's involvement with Universal K-9 could not be discovered

before trial.  The Court will not grant Defendant's motion based on this evidence.

    III.    <u>Jesse Stanley</u>

        Defendant, relying on counsel's interview with Julia Jaworski, argues

that "[i]t defies reason and logic to believe that Stanley was OK with using his

information for the government contracts, but not for the V.A. work."  (Dkt.

# 220.)  Thus, Defendant claims that Stanley was untruthful when he testified that

he gave Defendant his resume and certifications, but not for use with the V.A.

applications.  (<u>Id.</u>)  The Court finds that this is evidence is not material.  Jaworski

stated that she received Stanley's resume and certifications for the purpose of

securing a contract with the Department of Defense in 2013.  (Dkt. # 220, Ex. G.)

Thus, Jaworski's interview actually bolsters Stanley's testimony that he agreed that

his name could be used to assist in applications for dog training with the

Department of Defense.  Jaworski's interview also does not shed any light on

Defendant and Stanley's relationship in October 2015, when Defendant

represented that Stanley was currently employed by Universal K-9 and would be a

trainer for them going forward.  (<u>See id.</u>)  Because this evidence is not material and

because defense counsel has not stated why this evidence could not have been discovered before trial, the Court finds that Defendant is not entitled to a new trial based on this evidence.

IV.    Dustin Bragg

Defendant argues that Exhibit H, an MOI of Dustin Bragg's interview by Special Agent Jeffrey Breen, reflects that Bragg's testimony during trial understated his relationship with Defendant.  (See Dkt. # 220.)  Defendant is not entitled to a new trial based on this evidence.  Again, Defendant does not explain why this evidence could not have been discovered before trial.  Further, this evidence is somewhat cumulative if the Court accepts as true Defendant's own assertion that "Bragg's misinformation was finally called out with the introduction of Defense Exhibit 57 and 57A."  (Id.)  Defendant maintains that Exhibit H is material because it "reflects that Bragg took two trips with Croft [and] would stay overnight at Croft's house, before . . . the two ultimately fell out on bad terms." (Id.)  Bragg described Croft as an "ass" and that he was "rude" with a "very short temper."  (Dkt. # 220, Ex. H.)  These statements do not create an "exceptional case" that will present a "miscarriage of justice . . . as to warrant granting a new trial."  Bowen, 799 F.3d at 349.

<u>CONCLUSION</u>

Based on the foregoing, the Court **DENIES** Defendant's Motion for

New Trial.  (Dkt. # 220.)

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, April 28, 2021.

David Alan Ezra
Senior United States District Judge